## BIVINS v. THE STATE.

</div>

1. The evidence in the case was sufficient to authorize the jury to con-vict the defendant of being an accessory before the fact of the crime of murder.
2. The court did not err in excluding evidence to show that a certain wit-ness for the State had upon one occasion been guilty of the offense of carrying a concealed weapon. Such evidence was not admissible, over timely objection, to impeach the witness.

<div align="center">

No. 121. AUGUST 18, 1917.

</div>

Indictment for murder. Before Judge Littlejohn. Sumter superior court. January 5, 1917.

*E. F. Strozier*, for plaintiff in error. *Clifford Walker, attorney-general, J. B. Wall, solicitor-general, John A. Fort, solicitor-gen-eral, Jule Felton, M. C. Bennet*, and *J. T. Hill*, contra.

BECK, J.  Honor Bivins was indicted for the offense of being an accessory before the fact of murder, it being alleged that one Luther Stephens did kill and murder T. E. Gleaton by shooting him with a pistol; that Stephens had been duly tried and convicted of the offense of murder; and that Honor Bivins, though absent at the time the crime of murder was committed, procured, counseled, and commanded said Stephens to commit the murder. Bivins was convicted. He made a motion for a new trial, and it was overruled.

This is the third appearance of this case in this court. A decision reversing the judgment refusing a new trial after the first conviction is reported in 144 *Ga.* 340 (87 S. E. 285). And see 145 *Ga.* 416 (89 S. E. 370). The judgment in that case was reversed because a majority of the court was of the opinion that in view of the entire record, including the certificates and statements of the presiding judge in certifying the motion for a new trial and in overruling it, and in view of the grounds thereof, the defendant had not had a fair and impartial trial, and that the motion for a new trial should have been granted. The conviction in the present case, as in the former case, rests very largely upon the testimony of the principal who actually committed the murder, and who was duly executed in accordance with the sentence of the court; but sometime before he was executed he made a statement connecting the defendant in the present case with the commission of the crime as an accessory before the fact, and this statement by agreement was introduced as evidence by the State. This statement was in part as follows: "He told me that Mr. Gleaton tried to have that girl, or Essie, and told me that any man that tried to have a colored girl ought to be killed and he would be willing to help kill him, and I told him I wasn't; and he said he knowed I wasn't, because I didn't have sympathy enough to hold up for my race; and he told me to go over there and kill him, and told me to look in the drawer and get his pistol and go over there and kill him; and I done it. When I come back I give him his pistol and he unloaded it, and then I took and told him to carry me off, to take the buggy and carry me off; and he wouldn't do it; and I asked him to let me ride one of his mules, and he went out to the lot and got it and told me to ride it as far as I wanted to; and I did. He told me that he could get the mule back by describing it." Subse-

quently to the making of this statement, and on the day of his execution, Stephens made another statement directly and circumstantially contradicting his first statement, in which he declared that Honor Bivins was not connected with the commission of the crime. This latter statement was introduced in evidence by the defendant. The jury returned a verdict of guilty; and whether that verdict should be allowed to stand or not depends upon whether there was sufficient corroboration of the first statement made by Stephens, connecting Bivins as accessory before the fact with the commission of the crime. In the opinion delivered when the case was here before, it was said by a majority of the court that the corroborating evidence was slight; but we are of the opinion that the corroborating evidence was sufficient to authorize the jury to return a verdict of guilty. The evidence shows that the pistol that was used by the actual perpetrator of the crime belonged to the defendant in this case. That it was his pistol was admitted; but the accused sought to exculpate himself by stating to the jury that the pistol was taken from his trunk by Stephens without his consent. After the commission of the crime this pistol, the property of the accused, was found at the home of Bivins' mother. The defendant himself admitted in his statement that after the commission of the crime Stephens came to Bivins' house and told him of the commission of the crime and asked for a mule upon which he might ride away; and the defendant stated that he replied, "No, if you killed Mr. Gleaton, don't ride my mule anywhere; if you killed anybody, don't ride my mule a step." Stephens did ride the mule off. The defendant stated that he didn't know that the mule was gone until about an hour afterwards. Homer Wade, a witness introduced by the State (who was not introduced on the former trial), testified that he saw the accused the day following the murder of Mr. Gleaton, and had a conversation with him; that he sent for witness after he had been locked up. Accused made a statement to witness about his connection with the killing of Mr. Gleaton. This witness testified, in part: "He just up and told me that Luther Stephens had killed Mr. Gleaton with his ·[Bivins'] pistol, and said they were going to kill him [Bivins]; and he asked me if I knew whether they were going to lynch him, or something; and I told him, 'You needn't be uneasy about lynching you, or anything that way.' . . He said that Luther

Stephens, after he had killed Mr. Gleaton, came running in and told him that he had killed him, . . that he jumped on Luther to take his pistol away from him, and that Luther didn't want to give it up, but he told him he would have to; that he begged Luther to stay on there, but he said he would have to leave, that the dogs would track him over there; and that he told him, 'You stay on here, the dogs can't track you over here, it is so wet;' but Luther begged him to let him carry the pistol, and he told him, 'You can't carry the pistol; I have got to have something to protect myself;' that he said further to Stephens, 'You stay here with us, and we will all die in a pile,' but nothing would do him but that he must leave. Stephens asked him to let him ride one of his mules off, and he would turn the mule aloose and it would come back home, and so he let Stephens ride the mule off; that he went early next morning, or sometime after Stephens left, and told some negroes there—or just said he went and told some folks that if they didn't keep things quiet and it all got out, the white folks down there would kill negroes until they were satisfied."

While the corroborating evidence is not strong and not entirely satisfactory, nevertheless we are of the opinion that when it is all considered together the jury were authorized to find that the statement of Luther Stephens, the actual slayer of Gleaton, connecting the defendant with the crime as accessory before the fact, was sufficiently corroborated.

The court did not err in excluding evidence to show that a certain witness for the State had upon one occasion been guilty of the offense of carrying a concealed weapon. Such evidence was not admissible, over timely objection, to impeach the witness.

*Judgment affirmed. All the Justices concur.*